BARRY SCHAEVITZ, ESQ. (BS-3405)
JACOB MEDINGER & FINNEGAN, LLP
Local Counsel for Defendants Universal
Express, Inc., Richard A. Altomare and
Chris G. Gunderson
1270 Avenue of the Americas, 31st Floor
New York, NY 10020
(212) 332-7773 (telephone)
(212) 332-7239 (facsimile)

and

ARTHUR W. TIFFORD, ESQ.
TIFFORD AND TIFFORD, P.A.
Lead Counsel for Defendant Universal
Express, Inc., Richard A. Altomare and
Chris G. Gunderson
1385 N.W. 15th Street
Miami, FL 33125
(305) 545-7822 (telephone)
(305) 325-1825 (facsimile)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

CASE NO. 04-CV-02322-GEL

U.S. SECURITIES AND EXCHANGE COMMISSION,

                              Plaintiff,

v.

UNIVERSAL EXPRESS, INC., etc., et al.,

                              Defendants.
_____/

**MEMORANDUM OF LAW OF DEFENDANTS UNIVERSAL EXPRESS, INC.,
RICHARD A. ALTOMARE AND CHRIS G. GUNDERSON IN OPPOSITION
TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
(ELECTRONICALLY FILED)**

I <u>INTRODUCTION</u>

    Plaintiff United States Securities and Exchange Commission

("the SEC") has moved in the above styled civil action for summary judgment against Defendants Universal Express, Inc. ("USXP"), Richard A. Altomare ("Altomare") and Chris G. Gunderson ("Gunderson"). Because there exist genuine issues of material fact, the SEC's motion for summary judgment should be denied and this case should proceed to the jury trial which USXP, Altomare and Gunderson have demanded.

II  THE QUESTIONS PRESENTED

    A.  Does there exist a genuine issue of material fact, precluding the entry of summary judgment in favor of the SEC with respect to its claim under §5(a) and § 5(c) of the Securities Act of 1933, concerning the applicability of the Bankruptcy Code's "safe harbor" exemption, 11 U.S.C. 1125(e)?

    B.  Does there exist a genuine issue of material fact, precluding the entry of summary judgment in favor of the SEC, concerning the alleged violations on the parts of USXP, Altomare and Gunderson of the anti-fraud provisions of the Federal Securities Acts?

    As established in this memorandum of law, because each of the foregoing questions should be answered in the affirmative, the SEC's motion for summary judgment against USXP, Altomare and Gunderson should be denied.

III  DISCUSSION

    A.  <u>There Exists A Genuine Issue Of Material Fact (Good</u>

<u>Faith), Precluding The Entry Of Summary Judgment In Favor Of The SEC With Respect To Its Claim Under § 5(a) And § 5(c) Of The Securities Act Of 1933, Concerning The Applicability Of The Bankruptcy Code's "Safe Harbor" Exemption, 11 U.S.C. § 1125(e).</u>

(1)  <u>The Applicable Statutes</u>

Section 5(a) of the Securities Act of 1933, 15 U.S.C. § 77e(a), is entitled "Sale or delivery after sale of unregistered securities" and provides:

> Unless a registration statement is in effect as to a security, it shall be unlawful for any person, directly or indirectly-
>
> (1) to make use of any means or instruments of transportation or communication in interstate commerce or of the mails to sell such security through the use or medium of any prospectus or otherwise; or
>
> (2) to carry or cause to be carried through the mails or in interstate commerce, by any means or instruments of transportation, any such security for the purpose of sale or for delivery after sale.

Section 5(c) of the Securities Act of 1933, 15 U.S.C. § 77e(c), is entitled "Necessity of filing registration statement" and provides:

> It shall be unlawful for any person, directly or indirectly, to make use of any means or instruments of transportation or communication in interstate commerce or of the mails to offer to sell or offer to buy through the use of medium of any prospectus or other wise any security, unless a registration statement has been filed as to such security, or while the registration statement is the subject of a refusal order or stop order or (prior to the effective date of the registration statement) any

public proceeding or examination under section 77h of this title.

Section 1123, Bankruptcy Code, 11 U.S.C. § 1123, in pertinent part provides:

(a) Notwithstanding any otherwise applicable non-bankruptcy law, a plan shall

\* \* \* \* \* \* \*

(5) provide adequate means for the plan's implementation such as

\* \* \* \* \* \* \*

(j) issuance of securities of the debtor... for cash, for property, for existing securities, or in exchange for claims or interests, or for any other appropriate purpose;...

Section 1125, Bankruptcy Code, 11 U.S.C. § 1125, is entitled "Post petition disclosure and solicitation" and in pertinent part provides:

(e) *A person that* solicits acceptance or rejection of a plan, in good faith and in compliance with the applicable provisions of this title, or that *participates, in good faith and in compliance with the applicable provisions of this title, in the offer, issuance, sale or purchase of a security, offered or sold under the plan*, of the debtor, or an affiliate participating in a joint plan with the debtor, or of a newly organized successor to the debtor under the plan, *is not liable, on account of such* solicitation or *participation, for violation of any applicable law, rule, or regulation governing* solicitation of acceptance or rejection of a plan or *the offer, issuance, sale or purchase of securities.* (Emphasis supplied)

(2) <u>The Scope Of 11 U.S.C. § 1125(e)</u>

There exists a difference of Federal Appellate Court opinion

4

concerning the scope of 11 U.S.C. § 1125(e), *supra*.

In *Yell Forestry Products, Inc. v. The First State Bank Of Plainview*, 853 F. 2d 582 (8th Cir. 1988), the Court of Appeals held that 11 U.S.C. § 1125(e) protected the proponent of a confirmed plan of reorganization under Chapter 11, Bankruptcy Code, from liability in common law fraud damages to a purchaser of securities issued pursuant to that plan.

The First Circuit, in *In Re Public Service Company of New Hampshire (Kaufman v. Public Service Company of New Hampshire)*, 43 F. 3d 763 (1st Cir.), *cert. denied sub nom Rochman v. Public Service Company of New Hampshire*, 514 U.S. 1108, 115 S. Ct. 1959, 131 L. Ed. 2d 850 (1995), ruled that 11 U.S.C. § 1125(e) barred a common law fraud-based collateral attack upon a confirmed reorganization plan.

Finally, in *Jacobson v. AEG Capital Corp.*, 50 F. 3d 1493, 1496 (9th Cir. 1995), the Ninth Circuit expressed the view that 11 U.S.C. § 1125(e) "only provides a safe harbor for the disclosure and solicitation process of a bankruptcy".[1]

    (3) <u>The History Of USXP</u>

USXP was organized in the State of Delaware on January 19,

---

[1] This Court, *Lynch, D.J.*, in *Astor Holdings, Inc. v. Roski*, 325 F. Supp. 2d 251, 263 (S.D.N.Y. 2003), limited the applicability of the Ninth Circuit's decision in *Jacobson v. AEG Capital Corp., supra,* by noting that "the issue there was the collateral estoppel effect, on a subsequent federal securities fraud claim, of a finding that a plan was proposed in good faith."

1986. It merged into Packaging Plus Services, Inc. ("PPS"), a Nevada corporation, pursuant to a merger agreement entered into on April 2, 1986, and filed in the State of Nevada on June 2, 2986. The Nevada corporation, which survived the merger and changed its domicile to the State of Delaware, was a dormant public company organized on April 8, 1983, by Mr. Jerry Beagelman as Silver-Gold Reclamation, Ltd.

On December 19, 1991, PPS filed for reorganization under Chapter 11, Bankruptcy Code, in the U.S. Bankruptcy Court, Eastern District of New York ("the Bankruptcy Court"). *In re: Packaging Plus Services, Inc., Debtor,* Case No. 191-18486-260 (Hon. Conrad B. Duberstein, U.S. Bankruptcy Judge). Thereafter, pursuant to an order of the Bankruptcy Court, Mr. Beagelman and members of his family were removed from all offices and directorships of PPS and Altomare was installed as its President and Chief Executive Officer, which positions he continues to hold.

The Bankruptcy Court, on February 18, 1994, in Case No. 191-18486-260, confirmed PPS's Plan of Reorganization ("the PPS Chapter 11 Plan"). Thereafter, PPS changed its name to Universal Express, Inc., and Gunderson was appointed as its General Counsel, which position he has held to this date.

(4) <u>The Plan's Exhibit "I"</u>

Exhibit "I" to the PPS Chapter 11 Plan was a document entitled "1994 Stock Option Plan", also regularly referred to by USXP as the

"Stock Incentive Plan", which in pertinent part provided:

> This Plan shall be known as the "1994 Stock Option Plan", (the "Plan"). The purpose of this Plan is to provide a method to give incentive to those persons or entities who, in the sole and absolute discretion of the Board of Directors of Packaging Plus Services, Inc., a Delaware corporation ("the Company"), are responsible for the management, growth, and/or protection of the Company's business and who are making and can continue to make substantial contributions to the success of the Company's business including, but not limited to, present and future officers, directors, employees, consultants, franchisees and professional advisors of the Company or any future Parent or Subsidiary.
>
> It is anticipated that the Plan will encourage them to acquire capital stock ownership in the Company, thus giving them a, or increasing their, proprietary interest in the Company, providing them with greater incentive and encouraging their continuance in the service, and promoting the interests, of the Company and all of its stockholders...
>
>    \*   \*   \*   \*   \*   \*   \*   \*   \*
>
> The shares to be issued upon exercise of options which are granted pursuant to this Plan shall be made available, at the discretion of the Board of Directors, either from the authorized but unissued shares of Common Stock or from shares of Common Stock which are reacquired by the Company, including shares which are purchased in the open market.
>
> There will be reserved for use upon the exercise of options which may be granted pursuant to this Plan an aggregate of 1,250,000 shares of Common Stock.
>
>    \*   \*   \*   \*   \*   \*   \*   \*   \*
>
> If the number of outstanding shares of Common Stock of the Company shall be changed by reason of any recapitalization, stock split, or stock dividend, the aggregate number and kind of shares for which options may thereafter be granted under this Plan and the number of shares subject to options theretofore granted under and the price per share payable upon exercise of such options

shall be adjusted as determined by the Plan Administrators, in their sole and absolute discretion, so as to reflect such change; provided, however, that no such adjustment shall be made by reason of the issuance of additional shares of the Company for services, property or money regardless of whether the Company received adequate consideration.

   \* \* \* \* \* \* \* \* \*

Unless sooner terminated, this Plan shall terminate on the tenth (10th) anniversary date of the earlier of the date upon which this Plan is adopted or the date upon which this Plan is approved by the stockholders of the Company; provided, however, that all options which are granted under this plan shall continue in full force and effect until terminated in accordance with the terms and conditions of the options and this Plan. This Plan will be submitted to the stockholders of the Company for approval by the holders of a majority of the outstanding shares of Common Stock of the Company.

 (5) <u>The Confirmed PPS Chapter 11 Plan</u>

Paragraph VI.F of the confirmed PPS Chapter 11 Plan provided:

The protection afforded by Bankruptcy Code section 1125 with regard to the solicitation of acceptances or rejections of the Plan and with regard to the offer, issuance, sale, or purchase of the Postpetition Senior Secured Notes and the New Common Stock and New Warrants issued and distributed to the holders of Claims and Administrative Claims or in connection with the Plan and the Confirmation Order, shall apply to the full extent provided by law. The entry of the Confirmation Order shall constitute the determination by the Bankruptcy Court that Reorganized PPS, PPS, and each of their respective officers, directors, partners, employees, members or agents, and each Professional Person, attorney, accountant, or other professional employed by any of them, shall have acted in good faith and in compliance with the applicable provisions of the Bankruptcy Code pursuant to Bankruptcy Code section 1125 and the federal securities laws. In addition, the exemption from the requirements of section 5 of the Securities Act and any state or local law requiring registration for the offer or sale of a security provided

for in Bankruptcy Code section 1145 shall apply to the New Common Stock, the New Warrants, and the Warrants Shares to be issued under the Plan in exchange for any Claim against or interest in PPS. Entry of the Confirmation Order shall also constitute an order of the Bankruptcy Court that the Debtor has, by virtue of its public filings, complied with the reporting requirements of the Securities Act of 1934 through the Effective Date. Upon Confirmation, however, as a publicly held corporation the Debtor remains subject to Securities and Exchange Commission reporting requirements and subsequent to Confirmation of the Plan and the Reorganized PPS intends to comply with all periodic reporting requirements including Section 12(g) of the Securities Exchange Act of 1934.

(6) <u>The Gunderson Declaration</u>

Gunderson's declaration, which has been filed in support of the motion of USXP, Altomare and Gunderson for partial summary judgment [D.E. 129], in pertinent part states:

> 4. The factual matters set forth in the Universal partial summary judgment motion are true and correct. Specifically, the shares of Universal's common stock referred to in the Complaint in this civil action were issued in accordance with and pursuant to Exhibit "I" of the confirmed Chapter 11 Plan for Universal.

> \* \* \* \* \* \* \* \*

> 14. The 1994 Stock Option Plan was part of the Reorganization Plan for the company [Exhibit 8], approved and confirmed by the United States Bankruptcy Court, Eastern District of New York, pursuant to section 1125 of the Bankruptcy Code. [Exhibit 9]. The filing of the Stock Option Plan was and is a registration statement or its functional equivalent. It was filed with the SEC as part of the Reorganization Plan [Exhibit 8] <u>and</u> as a separate exhibit on Form 8-K as a part of the Company's transition Report 10-KSB for the period ending June 30, 1994. Subsequently, and on an annual basis, it has been filed with the SEC as an exhibit to the company's annual 10-KSB reports. Pursuant to law it is an S-8 registration covering advisors and consultants whose

> future need by Universal has been determined by the Bankruptcy Court for the long-term development of the company (10 years).
>
> 15. At all times I, as General Counsel for Universal, acted in good faith reliance on the following language in Section 1123 of the Bankruptcy Code, 11 U.S.C. § 1123, among others...
>
> 16. Once the Bankruptcy Court determined that Universal's Reorganization Plan (the First Amended Plan of Reorganization and Disclosure Statement), including the 1994 Stock Option Plan, contained "adequate information", I acted in good faith reliance on Section 1125 of the Bankruptcy Code, which states that once such a finding is made by the bankruptcy court, no other law or rule governed Universal's conduct...[2]

Mr. Gunderson's Supplemental Declaration filed contemporaneously with this memorandum, specifically reinforces the good faith basis underlying his actions as general counsel for USXP and those of the company's CEO, Mr. Altomare.

(7) "Good Faith" And "Genuine Issue Of Material Fact"

This Court (*Cote, J.*), in *Securities and Exchange Commission v. KPMG LLP,* 412 F. Supp. 2d 349 (S.D.N.Y. 349, 2006), held that genuine issues of material fact as to whether an auditing firm's engagement partner had acted with scienter precluded summary judgment in an enforcement action by the SEC alleging securities fraud in the audit opinion. Judge Cote observed that, although the auditor's engagement partner had presented arguments and evidence to support a finding that he had acted in good faith,

---

[2] Gunderson and Altomare have appeared for and undergone deposition examination in connection with this civil action.

the SEC had presented sufficient evidence to support a jury finding that the engagement partner had been well aware of the danger that the disseminated financial statements had materially misstated Xerox Corporation's financial condition, yet had authorized the auditor to issue a clean audit opinion.

Similarly, in this case, Gunderson has declared that he, USPX (and, by inference, Altomare) acted in good faith, thereby entitling them to the protection afforded by 11 U.S.C. § 1125(e), *supra*, with respect to the stock which forms the subject-matter of this civil action. By disputing the good faith of Gunderson, Altomare and USPX, the SEC has confirmed the existence of a genuine issue of material fact, precluding the entry of summary judgment in the SEC's favor, with respect to its claims under §5(a) and § 5(c) of the Securities Act of 1933.

The same disputed facts preclude the SEC from obtaining a summary judgment with respect to the press-release claims and Sections 10(b) and 17(a) of the Act.

                              Respectfully submitted,

                              TIFFORD AND TIFFORD, P.A.
                              Lead counsel for Universal,
                              Altomare and Gunderson
                              1385 N.W. 15th Street
                              Miami, FL 33125
                              (305) 545-7822
                              FAX: (305) 325-1825

                    BY _____/S/_____

ARTHUR W. TIFFORD
(NY ID- 011481)

CERTIFICATE OF SERVICE

I hereby certify that on November 13, 2006, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF System, which will send notice of electronic filing to the following:

>Julie K. Lutz, Esq.
>Attorney for Plaintiff
>U.S. Securities and Exchange Commission
>Central Regional Office
>1801 California Street, Suite 4800
>Denver, CO 80202-2648
>
>Robert B. Blackburn, Esq.
>Attorney for Plaintiff
>U.S. Securities and Exchange Commission
>233 Broadway, 11th Floor
>New York, NY 10279
>
>Marvin Pickholz, Esq.
>Jason Pickholz, Esq.
>Akerman Senterfitt LLP
>335 Madison Avenue
>Suite 2600
>New York, NY 10017
>
>John B. Harris, Esq.
>Stillman & Friedman
>425 Park Avenue
>New York, NY 10022
>
>Harry H. Wise, III, Esq.
>770 Lexington Avenue, 6th Floor
>New York, NY 10021
>
>John A. Hutchings, Esq.
>Dill Dill Carr Stonebraker & Hutchings, P.C.
>455 Sherman Street, Suite 300
>Denver, CO

_____/S/_____
ARTHUR W. TIFFORD