UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
                                                           :
U.S. SECURITIES & EXCHANGE                                 :
COMMISSION,                                                :
                                                           :
                            Plaintiff,                     :
                                                           :     04 Civ. 2322 (GEL)
            -v.-                                           :
                                                           :     **ORDER**
UNIVERSAL EXPRESS, INC., et al.,                           :
                                                           :
                            Defendants.                    :
-----------------------------------------------------------x

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 8/17/09

GERARD E. LYNCH, District Judge:

      Before the Court is the Receiver's motion to allocate the proceeds of certain judgments in favor of Universal Express, Inc., which constitute the sole remaining unliquidated assets of the defunct corporation.

      The Receiver proposes to assign the judgments to Arthur W. Tifford, P.A. ("Tifford"), the law firm that has been pursuing collection of the judgments for some years with limited success, subject to the firm's argreement to remit proceeds in excess of earned attorneys' fees back to the creditors of Universal Express. The SEC objects to the proposal, arguing that the assignment to Tifford is unseemly because Tifford represented Universal Express and Richard Altomare in this action, and that the judgments instead should be sold to the highest bidder. Under the unique circumstances of this case, the SEC's proposal is unrealistic, and, subject to the modifications set forth below, the Receiver's motion will be granted.

      The judgments in question, totaling some seven hundred million dollars, were entered in the Florida state courts in 2001 and 2003. Over the years, as part of his fraudulent efforts to promote Universal Express stock, Altomare touted these judgments as substantial assets of the company (in addition to claiming that the judgments, the larger of which was obtained by default, constituted "proof" that the company's sagging stock price was the result of conspiratorial activity rather than his utter failure to use funds raised by the sale of stock for any effective business purpose). To date, however, efforts to collect the judgment have produced just over $1 million, and nothing whatsoever for several years. Moreover, none of the money collected actually benefitted the company, as Altomare paid the entire sum, net of Tifford's contingency fee and expenses, back to Tifford for legal services rendered to Altomare and Universal Express in the SEC action and related criminal investigations. Certain penny stock has also been obtained as a result of these efforts, but is tied up in litigation. At present, Tifford is actively pursuing that litigation, in the hopes of freeing the stock for sale, which if successful could produce up to $3.5 million, minus the law firm's fees and expenses, for the company.

The SEC is certainly correct that, if these judgments had any substantial value, the best way to liquidate that value for the corporation would be by public sale. That course of action, however, is not realistic. As the Receiver points out, the estate's current liquid assets only amount to approximately $30,000. A reasonable advertisement in the Wall Street Journal relating to a public sale would cost approximately $10,000 per day. Moreover, any potential bidder would surely undertake due diligence; administration of such a process by the Receiver and/or Tifford would therefore entail additional legal fees that the estate cannot afford. Perhaps more importantly, these expenses would be unlikely to yield any benefit to the company whatsoever. Both the Receiver and the SEC agree that, as the SEC puts it, "there is no evidence that the judgments have any reasonable likelihood of resulting in a monetary benefit to the defrauded shareholders of [Universal Express]." (SEC Mem. 2.) This estimation is certainly reasonable in light of the failure of collection efforts to date. Even to assess the value of the judgments, let alone to pursue them, would require a substantial investment by any bidder other than Tifford, particularly if the bidder sought to understand the history of the judgments and the prospects for their collection. Furthermore, as a result of a sale by Universal Express under Altomare's stewardship, Tifford already owns 40% of the judgments' value. It is thus extremely unlikely that an auction such as that proposed by the SEC would result in an offer of any value, or in anything other than the depletion of the remaining assets of the Receivership. Leaving the judgments in the hands of Tifford, who is intimately familiar with the history of the judgments, and who moreover is the only person who has shown any interest in the judgments or belief that they may ultimately have some value, seems the only practical resolution short of simply abandoning the asset and closing down the effort to collect.

The SEC also argues that the Receivership should remain in being, in order to monitor Tifford's expenses. The Court agrees that it would be irresponsible to allow Tifford (or anyone else) to pursue the judgments, with a promise to pay proceeds net of collection back to Universal's creditors, including the SEC, and its shareholders, without court supervision. But it is not necessary to continue the Receivership, with the attendant costs and legal fees, in order to accomplish such supervision. The Receiver's proposal contains some mechanisms for an accounting by Tifford of any proceeds, and these can be strengthened. In addition, the SEC remains in place to review any such accounting, and to challenge any excessive fees or expenses. Accordingly, the Court is confident that Tifford will accept the modification of the Receiver's proposal to require a sufficient accounting.

For the foregoing reasons, it is hereby ORDERED that:

1. Tifford shall be permitted and is hereby authorized to continue his collection efforts even after the Receivership is closed. He will be entitled to his reasonable costs and his 40% contingency fee on any moneys collected, on the terms and conditions set forth in this Order.

2. Tifford will be responsible for all costs necessary to collect the judgments. It will be within Tifford's discretion to determine when collection efforts are no longer expected to achieve sufficient success to justify further action.

3. If Tifford is successful in collecting funds, he shall first be permitted to pay his fees and costs of the collection efforts, subject to the approval of the Court. If there are funds left over after those payments, those funds shall be allocated and paid as follows:

   (a) The employees who were let go without pay on the day that the Receiver closed the business, September 7, 2007, will be paid their outstanding salary and any loans that they made to the Company. The Receiver will provide a schedule of these amounts and last known addresses to Tifford. If there are insufficient funds to make full payments, payments shall be made pro rata.

   (b) If the employees are fully paid and funds remain, then Tifford will pay trade creditors who are owed more than $1,000. The SEC will be deemed a creditor for the amount of its judgment. The Receiver will provide a schedule of these creditors to Tifford. Again, if full payment cannot be made, pro rata payments will be made.

   (c) If the trade creditors are fully paid, the balance will go to the SEC.

   (d) If the SEC's judgment is fully paid, then the shareholders will be paid the residue pro rata. The Receiver will provide the last available share ledger to Tifford.

   (e) Funds returned to Tifford due to inability to locate employees, creditors or shareholders will be paid to the SEC.

4. Whenever Tifford collects funds totaling $100,000 or more, and at such time as Tifford determines that there is no cost-effective benefit to the estate from pursuing further collection efforts and that the collection effort should be abandoned, he shall petition the Court to re-open the matter to make a report of funds collected. Such petition shall be on notice to the SEC, and shall contain an accounting of the funds acquired, and of the fees and expenses claimed by Mr. Tifford, as well as a proposal for disbursement of the funds over and above such fees and expenses. Upon review by the Court, the funds shall be disbursed to Tifford and the various beneficiaries as directed by the Court. Tifford will be entitled to his prevailing hourly rate for the time expended on the distributions outlined above.

SO ORDERED.

Dated: New York, New York
       August 14, 2009

                                                                 _____
                                                                        GERARD E. LYNCH
                                                                  United States District Judge